And we do have, just stating on the record, we do have, it appears, is it Jocelyn Lopez-Wright, who is representing the respondent, is appearing by video and is in Washington, D.C.? Is that correct? Yes, it is, Your Honor. All right, and you can see and hear us fine? Yes, I can. Okay, let us know if there's any problems. Thank you. Good morning, Your Honor. All right, good morning. Good morning. My name is Jan Joseph Bejar, and I represent Mr. Lorenzo Lopez in this matter. Would you speak a little louder, please? Yes, I will try. Good morning. Good morning. My name is Jan Joseph Bejar, and I represent Mr. Lorenzo Lopez, and I will be presenting oral argument on his behalf. I would appreciate it if the court would give me four minutes for rebuttal. All right, we'll try. You know, we're taking, it's our time, but we'll go for it. Thank you. Thank you. All right, so I know that the court is familiar with the facts of the case. You've received the briefs and reviewed them. Just a couple of chronological points that I'd like to make regarding that. My client came to the United States in 1998 at the age of 14 illegally. His father was here since 1990 as a permanent resident. He petitioned him. It took a long time, but eventually, in the year 2000, he got his green card. I'm sorry, in 2000, he got his advanced parole, which is different from parole from outside because it's parole that is given inside the United States so that the person can go out and return freely. In 2002, February 2002, he received his green card. And in March of 2008, he was arrested at the port of entry because found in his vehicle was a young lady who was attempting to enter the United States illegally, and he was charged with smuggling her. Eventually, years later, he admitted the allegation. Initially, he contested it because there was a matter pending before this court, Rodriguez Echeverria, which questioned whether a person in such situation was supposed to have received notice of their right to counsel, and he was not given that notice. Eventually, the Board of Immigration Appeals ruled that it was not necessary to receive notice, so the case proceeded. Okay, so then we have Carrera. Yes, but... All right, but I guess the question here, your client, if we just accept the fact that his first notice wasn't adequate, there are subsequent notices in this case, and so we'll accept that the March 14, 2008 did not identify the time, date, or location for Mr. Lopez's appearance. Why is this deficiency not corrected by the notices of hearing that are issued April and June of 2018? And because they appear to say all of those things. In my view, in Carrera, you have facts where there's this deficient notice to appear, and then many, many years later, with no corrections, then the Supreme Court basically says, okay, well, you can't hold that against him, but here, you've got two adequate notices that follow. Except that they're issued by the wrong party, Your Honor. And it does not comply with the statute. The statute at issue is 1229A, 8 U.S. Code 1229A, which says that the notice to appear, to be valid, must have several elements, including, without doubt, and with specificity, the time and place when the hearing is going to take place. Time, date, and location. Yes. At least time and date. What about the Copper case? The government argues that the Supreme Court decision in Carrera does not call into question the Ninth Circuit case of Papa. What is your response to that? I don't know, Your Honor. I believe that the Ninth Circuit very clearly stated, the Supreme Court stated, that the notice to appear is the only document that controls, and that the notice to appear, Justice Sotomayor very clearly states, for purposes of 1229B, D1, the notice to appear must have all the elements. And it addresses. But OK, does Carrera specifically overrule Papa? I think it does, Your Honor. No, no, no. Does it say in the Carrera, does it specifically in the Carrera decision say we are overruling Papa? It does not. It does not. So it doesn't specifically. So you would have to argue implicitly. Yes. But the facts in Carrera weren't anything like the facts in your case. In Carrera, the guy got one, or I don't know if it was a woman or a man, Carrera got one deficient notice. And then a decade later, they want to remove him, right? I understand. And Your Honor, the difficulty, I think, in understanding this for most people that don't practice immigration law full time, is the terminology. A notice to appear is really a charging document. It is the same. It is the equivalent of a complaint in a criminal case or even in a civil case. The notice of hearing is simply a notice issued by the court. It's an administrative thing, whereas the other is a statutory thing. It is what vests jurisdiction with the court. The notice of hearing, the fact that both terms include the word notice does not mean anything. One notifies a person that the hearing is being held at such a place with Judge so-and-so at this time. And that is used very often to change. Well, OK, let me ask you this. Since you're pulling out the card that the practitioners, it's a different situation. Let's just say that if we were of the view that Carrera doesn't specifically address the exact issue, why shouldn't this go back to the agency to make a determination in the first place? Because the agency, whether a defective notice of appear can be supplemented, why shouldn't they have the first crack at it? Because there is case law that indicates, let the agency speak to it first, and then let it work its way up. And they haven't spoken to it, right? Well, first of all, Your Honor, Well, let's say you're not going to win here. Why not give the agency the first crack? Well, I'll try to address that. The notice to appear can be revised by the Immigration Service. That's the Department of Homeland Security. So if we're referring to the agency as the Department of Homeland Security, the Department of Homeland Security does revise its notices to appear, and it changes it very frequently because the immigration judge simply will say, this doesn't state a claim. This doesn't comply with the requirements. I can dismiss the case, or you can go and redo your notice to appear, which is, again, the charging document. It is not the notice of hearing, which is simply an administrative document issued by the court because it sets the time. It may have changed judges. It may have changed courts. It may have changed time. It may have changed a variety of things. And that's normal. That happens in all courts. And didn't Perot specifically say, administrative realities do not excuse the failure to provide specific time, date, and place? Exactly my point, Your Honor, because what Perot says is the charging document, the notice to appear, must, with specificity, say what is the time and place and location of the hearing. If you do not meet that, you do not have a notice to appear. Your complaint in this case is defective. There is no jurisdiction. There is no stop time. So I understand your argument. It's about notice to the petitioner, because we want people to know what they have to do. So what is wrong with the April and June notices in this case? That would be the same as a federal district court doing the work of the prosecutor and saying, well, your complaint is defective for these reasons. Let me fix it for you. But what doesn't give your client notice there? It's about giving your client notice of what your client has to do, time, date, and location. So what is wrong with it? Justice Sotomayor addressed that, and she said in the charging document, in the notice to appear, the statute specifically says you must provide in the notice to appear, not subsequently. She addressed the fact that the government stated that they relied on a regulation from 1997, and then they relied on a BIA case matter of Camarillo, and she said, absolutely not. The notice to appear has to contain it. But there was only one notice to appear in Pereira. There wasn't three, like in your case. Your Honor, that's again where, with all due respect, the court is mistaken. There is one notice to appear in every case. There was one complaint. The notice of hearing is not a notice to appear. So if we accept your view, if for some reason, so there's all these cases out there that the first one wasn't OK. It can never be corrected? It can be corrected. It's like amending a complaint, Your Honor. It's not like saying, you know, we're sending you a separate notice that we changed our mind. Instead of coming on Tuesday, please come on Wednesday, at such and such a time. The notice of hearing is not a notice to appear. It is simply an administrative document issued by a court. The court is not the Department of Homeland Security. Jurisdiction vests in the immigration court only when a notice to appear, that is the charging document, has all elements complied with. A notice to appear can be amended, as I said earlier. But it has to be amended by the Department of Homeland Security, not by the judge, not by the immigration court. OK, I think I'm, I'll look forward to hearing what the government has to say about that. So then, do you want to? He has a little more time. Oh, yeah, no. I mean, I'm just wondering if you want to move to other points. Because you have your parole point, too, right? Yes. And you wanted to save four minutes. So I don't want to tie you up on that. So as far as what I was starting to point out to the courts, when my client admitted the allegations, when he admitted that he was removable and admitted the charges, at that point, he, and by the way, if we agree to the stop time rule, then it stopped at six years and one month. So he was 11 months shy of being eligible on his own. However, at that time, there was a case from this court called Cuevas-Gaspar. And under Cuevas-Gaspar, if you had entered the United States as a minor, as he did at the age of 14, you were entitled to have the domicile of your parents imputed to you. His father was a domiciled alien with a green card since 1990. So he had an additional 10 years. Consequently, he relied, and the administrative record does reflect that, that he, in fact, the immigration judge said, I assume that you're relying on Cuevas. And I said, yes, Your Honor, I'm relying on Cuevas for applying for cancellation. After he made the decision to admit, the Supreme Court gave deference to the Board of Immigration Appeals in Escobar, which then eliminated the validity of Cuevas, putting him in a position where he no longer was eligible to take advantage of his father's resident status. So that is why he was not eligible for cancellation, not for any other reason. Again, the stop time rule does not stop in his case. And I would appreciate it if the court would let me save the time. Yes. OK. Thank you. All right, we're ready for the government. Good morning. Good morning. May it please the court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. Preliminarily, I'd like to point out that two of the issues the petitioner discussed, that is his challenge to the immigration court's jurisdiction post-Perera, and to the Cuevas-Gazpar retroactivity, we believe that those claims have been foreclosed. The first, by Karen Geethy, which was just decided by the court, I believe, two weeks ago, which defers to Bermudez-Cota, and says that a notice to appear does not have to, a notice to appear that's defective under Perera is still sufficient to vest the immigration court with jurisdiction, so long as there is a curative notice of hearing combined with that notice to appear. And with respect to the retroactivity issue with Cuevas-Gazpar, we filed a 28-J letter, I believe, within the last year or so, maybe even more than that, regarding Lemus. And we believe that the Lemus case in this court forecloses his claim that matter of Escobar and Martinez Gutierrez should not be retroactively applied regarding amputation of his father's permanent residence to him for purposes of calculating the continuous residence, period. So I'm going to. What do you do with the Supreme Court language in Perera? I realize that there wasn't a second notice, and the facts are slightly different. But it specifically says that administrative realities do not excuse the failure to provide specific time, date, and place information in, as your opposing counsel said, has to be in the notice to appear. I think our position is consistent with the Supreme Court's language, Your Honor, because the government is not arguing that the defective notice to appear triggers the stop time rule. Under Perera, we can't argue that. And in this case, the notice to appear is missing the relevant information regarding the time and place of his hearing. So we're not arguing that the notice to appear by itself triggers the stop time rule. The government's position is that the notice to appear, combined with the subsequently mailed out notices of hearing, which cured the defects of the NTA  those two documents together are sufficient to trigger the stop time rule, as of the service of the document that cured the defects in the NTA, in which, in this case, the- You heard what counsel said, is that it just has to be another NTA. I think that's his position. And so that even though it appears on this record that the petitioner did have notice of time, date, and location with two other things that occurred, if Perera doesn't- The facts in Perera were different. So Perera really doesn't stand for the authority that you're asking it to stand for. And it doesn't really stand for the authority that petitioner's asking it to stand for. It doesn't really address it, in my view. So what is your best authority that an NTA can be cured by subsequent mailings to a petitioner? That would be POPA in this court, Your Honor. And the state of the law in the Eighth, the Ninth, the Second, and the Fifth, I believe with the Sixth Circuits, pardon me, prior to Perera, support the government's position. Because as Justice Kennedy recognized in his concurrence in Perera, the state of the law, there was a consensus that an NTA that was missing the relevant information combined with a notice of hearing that provided that missing information would be sufficient to satisfy the notice requirements of Section 239A of the Immigration and Nationality Act. And I agree that Perera doesn't stand for what we're arguing. What we're arguing is that Perera didn't address this issue. And so it isn't- Perera isn't controlling to the extent that Perera says a defective NTA is insufficient to trigger the stop time rule. We're not contesting that. We're saying the NTA cured by the notices of hearing is sufficient together. And that is not inconsistent. In your argument, the stop time would start with the cured notice of hearing, not the time of the NTA. And counsel, for the petitioner's position is a notice of hearing can never cure an NTA. Only a new NTA can. I did hear him say that, although it wasn't clear to me whether he was saying that with respect to the stop time rule or if he was arguing jurisdiction. Because at one point, he said it didn't vest the immigration court with jurisdiction. But I believe that that issue, if that argument that he's making goes to the immigration court's jurisdiction, that claim has been foreclosed by Karen Deac. I'm making the argument with respect to the stop time rule. And it's based on the actual language of notice to appear and how it's defined. And the court, as Judge Nelson noted, the Supreme Court said it doesn't matter that you could think of administrative problems that it solves. It's a term that's defined and used. That's correct, Your Honor. But I believe the Supreme Court, when it was conducting that analysis, was doing so with the assumption that the triggering date would be the NTA date. We're not arguing that the NTA date is the stop time rule. That's when the stop time rule was triggered. We're saying that the triggering date is the notice of hearing that cures the NTA. And that is a set of facts that was not discussed or addressed in Pereira. And we believe that that. Why wouldn't it make sense in this situation to send it back to the agency to, they haven't opined on this, correct? And the agency knows all the in and outs and give them the first stab at this. That's certainly an option, Your Honor. We would also point out, however, that in Bermuda's Cota, the board said not only that the regulation was sufficient, it said, and the notice of hearing and the defective NTA together were sufficient to vest immigration court jurisdiction and, and it uses the conjunctive and, to satisfy the notice requirements of Section 239A of the INA. And that's what it's an issue with respect to triggering the stop time rule. I would also point out that the court's decision in Copa, in the government's view, remains good law. It was not explicitly overruled by the Supreme Court's decision in Pereira. Pereira instead overruled Moscosa. And so we're not relying on Moscosa. Excuse me for interrupting, but one more question. Isn't this purely a legal question? And we, as a panel, are perfectly capable, it's not a factual question, it's a legal question. So why, is there any reason to remand it in this case? Or the purpose of the administrative agency first determining, and then we reviewing it when it's a purely legal question? I believe there are pros and cons to both, to the remand or to deciding. I agree that it is a question of law that the court can review de novo. However, the government's position is, of course, that the Bermudez Cota signals that the board considers the notice of hearing, hearing the notice to appear as sufficient to satisfy the notice requirements of INA 239A. And also that this court's decision in Popa has not been overruled and remains good law. And so, basically- So that it would be pointless to remand this if I understand your position because the BIA has already decided it. Well, under circuit law, it reverts back to Popa. And under Popa, the notice of hearing and the NTA combined are sufficient to trigger the stop time rule in this case. The BIA did this before Pereira, right? No, I'm talking about Bermudez Cota, if you'll excuse me. I'm quoting here at page 447 of Bermudez Cota, 27 INN decision at 447. It says that, accordingly, a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an immigration judge with jurisdiction over the removal proceedings and meets the requirements of Section 239A of the Act. So long as a notice of hearing specifying this information is later sent to the alien. I believe that Karen Giffey excised everything with starting at and, and meets the requirements of Section 239 of the Act. It excised that portion of that quote that I just read to you from its decision. And so, the government doesn't read Karen Giffey as deferring to that part of Bermudez Cota, but it does read it as deferring to the board's holding on jurisdiction, immigration court jurisdiction post Pereira. But I do suggest that because the board has indicated this and because circuit law and POPA remains good law, that those circumstances counsel in favor of agreeing with the government's reading that the NTA and the notice of hearing together are sufficient to trigger the stop time rule in this case. Could I ask you, in terms of the rationale for POPA, as I understand it, it reasoned that the, the combination of the two was necessary because they couldn't always put the time in place. There were practical problems that prevented the agency from putting the notice of time and place in the notice to appear. And therefore, providing the missing information in a later notice to appear was permissible. Didn't, and Pereira rejected this argument explaining that administrative realities do not excuse the failure to provide specific time, date, and place information. Rather, the initial notice to appear must set that time. And if necessary, subsequent written notice specifying a new time and place may be provided. Yes. I don't think she understands your question. My question is, what was the rationale for our decision in POPA? Oh, well, POPA was the, POPA happened, the circumstances of POPA was a motion to reopen an in absentia removal proceeding. And so the alien was served the notice to appear that didn't include the date and time of his hearing. And so when the notice of hearing was later mailed to him, he didn't get it. And so he was ordered removed in absentia because he didn't attend. And we relied on a reg that said, which requires the government to provide in the notice to appear the time, place, and date of the initial removal hearing where practical. But. Right. The Supreme Court said in effect that those considerations are no longer relevant. This we're practical. Language is simply an administrative convenience. Right, but the Supreme Court said that in the context of the argument that the NTA date would be the triggering date for the stop time rule. The government's position isn't inconsistent with what the Supreme Court said in Pereira because we're not arguing that the NTA date is the triggering, is the date that his approval of continuous residence stops. That would be inconsistent with Pereira. Pereira says that if it's missing that, then the service of the NTA cannot trigger the stop time rule. And we agree with that. But if the NTA defects are cured by a subsequently mailed notice of hearing as it was in this case, those two documents combined, I don't think there's anything in Pereira that precludes the government or the government's argument here that those two documents combined would be sufficient to trigger the stop time rule. Because we're not relying on the date of the NTA, we're relying on the date of the notice of hearing. But where do you get that from? In other words, there's a specific definition of notice to appear and you're just saying, well, if we didn't meet that definition and the stop time rule wasn't invoked, then we could just send them another piece of paper. Now that may, that's, it doesn't sound unreasonable, but where does it come from? And again, we're relying on pre-Pereira circuit law and the consensus of the circuits, POPA, Guamariga, let me see, Dubovnay, Gomez-Palacios, and Hader, also the Orozco case in the Third Circuit. All of those cases agreed that a notice of hearing combined with a defective NTA would be sufficient to trigger the stop time rule. And the Third Circuit actually did say that a notice of hearing, it anticipated Pereira. The Third Circuit in Orozco said, a notice of hearing that doesn't include that information is not sufficient to trigger the stop time rule. But it went on to hold that a notice of hearing combined, I mean, the notice of NTA, the NTA combined with a notice of hearing would be sufficient. And that's still- If we held consistent with what the petitioner is asking, would we be creating a split in the circuits? I don't believe so, Your Honor. Because- Oh, I'm sorry. All right, if- With what he's asking, yes. With what the petitioner is asking, you're arguing what other circuits have held. If we were to hold that the notice of hearing in this case did not cure the defective notice to appear, in an opinion, would that create a split in the circuits? I believe that it would not only create a split in the circuits, it would create a split within the circuit as well. Because it would be inconsistent with TOPA. The split in the circuits in the other circuit cases were pre-Pereira. Pre-Pereira, yes. Just as TOPA was also pre-Pereira. All of the cases- So this would be the first post-Pereira. So that doesn't- So it's not really a split in that sense. Because the cases that you're arguing were pre-Pereira. So now we're post-Pereira. And you're asking us- That's correct. Okay. All right, let me just quickly, I know we're going into overtime, but I have this question. What would have to happen here for the petitioner to prevail? What would this court have to hold for the petitioner to prevail on what he's asking for? First, it would have to be that he can't, the notice to appear can't be cured. Okay. That's correct. Anything else? So then there's no stop time. That's correct. There would be no stop time rule. He would be accruing residence. And so the admission, the admitted in any status issue, which is the other issue that's still live before the, in this case, would fall out because the untriggered stop time rule would not apply. Okay. So that would be the only thing, Your Honor. Unless the court has any questions. Is there any, do either of my panelists have other questions? Maybe, just don't sit down yet. You have another question. You send him a second notice to appear. It's the first one that's defective. Uh-huh. That's a question. Oh, I'm sorry. Oh, it could be sent him a second notice to appear. DHS could, I suppose, file a superseding notice to appear if this was remanded. And if the notice to appear included all of the information, that would certainly be an option, but it still wouldn't trigger the stop time rule in this case because he's passed the 10 years. No, that's this case, but I'm talking in general. In general? Yeah, but that's because he was six years and one month. Great, great. Yes, the agency could file a superseding MTA or amend the MTA. And could I ask you, if you know the answer, with respect to this particular case, why didn't they put the time and place in the initial notice to appear? It's not in the record, and I'm not sure, and this is pure speculation, but I think it's because he was apprehended at the border during an alien smuggling situation. And so when he gave his address as Oxnard, which would be in the jurisdiction of the Los Angeles Immigration Court, whereas everything that happened regarding his inadmissibility happened at the San Diego border, which is the jurisdiction of the San Diego Immigration Court, perhaps they wanted to wait and see which court would be more convenient for the case and what issues would be implicated, for example, if they needed witness testimony from the border agents or anything like that. That's pure speculation, though, Your Honor. I know that's speculation and that's the way I'll treat it, but it seems to me that this is not an isolated case. It seemed as if this happened in any number of cases where they just didn't do it. And is there any reason for that? I mean, I forget the number that was given in Piera in terms of the number of cases that could conceivably be affected if a number was given, but my impression was that it was a matter of course that they just sent these notices to appear without putting in any time and place. That was the practice, I believe, after Irira, because the Immigration Service didn't have access to the Immigration Court's dockets and so they couldn't put a hearing or a calendar date that would be a valid one. And now? I am not aware of the state of the logistics of that, Your Honor. Okay. All right, thank you. Thank you. Petitioner, you have rebuttal time. Thank you very much. And Your Honor, Judge Corman, the points you made are accurate. The number of cases- The number of points. The number of cases that got a hearing that the government counsel said were not given time and date in Pereira was, according to the counsel, almost 100% of the cases. That's a lot of cases. And they simply did it because they didn't think they had to. They could get away with not doing it and nobody ever questioned them on it. Post-Pereira, a flurry of motions to terminate were filed, including several from my office. And as a consequence of that, the Immigration Service started putting dates, false dates, but dates on the notice to appear. For- What do you mean false dates? They would just put a time and a date and then they let the court sort it out, which essentially, I guess, would cover the meaning of the statute because it did have a time and a date and a place to be sorted out later by the court. But they did not do it pre-Pereira. Now- The date sort of has an attitude to it. That's- Your Honor, I will- So, I mean, that kind of means like they're not doing their job and that they're, it's a, I mean, are you saying that was, I don't know, that, I mean, false has, it's not a- Well, I'll give you an example. It's not a neutral word. Okay. I'll give you an example. January 31st, 2019, over 500 people showed up at the immigration court in San Diego because they all had notices to appear that had that date. The immigration court cannot accommodate that many people and they had people in the lobby of the building outside with clerks of the court giving them the corrected dates because nobody bothered to do the right, do their job. So, yes, it is a false date and that's, I stand by it. I'm not trying to be offensive, but I'm trying to be honest with you and I'm trying to be truthful. Post-Pereira, this court decided, Narangethi, the Sixth Circuit decided, Hernández Pérez, I believe, and these are all cases that tried to cure the problem that the Immigration Service did not provide, did not fulfill the requirements of the statute. The notice to appear is a statutory defined document and if you don't meet it, you don't meet it any more than you meet it and you don't meet a complaint if you don't meet the statutory requirements. And it essentially is akin to applying a vaccine post-infection. You don't do it. You do it ahead of time, you cure the problem before, and you don't let an infection occur so then you have to try to treat it. And that is what they did in Bermuda, Escota, in Hernández Pérez, and in Narangethi. And in Hernández Pérez, I will note that the Sixth Circuit noted that they were on unstable ground and they felt uncomfortable in adopting a position that a single document, the notice to appear, must comply with certain requirements for the stop time rule and different ones for investing jurisdiction in the immigration court. The facts in Pareda and the facts in Lorenzo are not dissimilar. The fact that one received the post-service notices by the court does not cure the problem. It is a statutory interpretation problem, and that's what Pareda is about, and that's what Justice Sotomayor said. A three-wheeled Chevy is not a car. That's all there is to it. Thank you. If you don't have any more questions. Thank you, Your Honor. In your view, this could never be cured once they issued a defective notice to appear? They could cure it by issuing a subsequent notice to appear or an amended notice to appear, and they do do that routinely. I have had numerous cases, I've been doing this for 36 years, and I have numerous cases where they have issued amended notices to appear or superseding notices to appear. And that puts us, that restarts the stop time? Well, yes, because it would be the service of the notice to appear. A superseding notice to appear is a new notice to appear, just like a complaint in a criminal case is a different, a superseding complaint is a different complaint. Thank you. Thank you. Thank you very much. Thank you for your argument. Thank you both for your argument. This matter will stand.
judges: D.W. Nelson, Callahan, Korman